# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

STAALDAM BEHEER B.V., a Netherlands
company, and STERK MIDDEN NEDERLAND
B.V., a Netherlands company

    Plaintiffs,

vs.                                              CASE NO.: 8:09-CV-02226-T-17EAJ

ASAP INSTALLATIONS, LLC, a Florida
Limited liability company, and KIMMIT, INC.,
a Florida corporation,

    Defendants.
_____/

## Order Denying Defendants' Motion to Dismiss

THIS CAUSE is before the Court on Defendants, ASAP Installations, LLC and Kimmit, Inc.'s, Motion to Dismiss (Doc. 11); Plaintiffs, Staaldam Beheer B.V. ("SBBV") and Sterk Midden Nederland B.V.'s (Sterk), response thereto (Doc. 9), and defendants' reply (Doc. 18). For the reasons set forth below, Plaintiffs' Motion to Dismiss is denied.

## Background and Procedural History

In approximately July 2006, Sterk's sister company, Staaldam Beheer B.V. ("SBBV"), entered into an agreement with the defendant, ASAP, for the rental of a JCB sheetpiler, a PVE vibratory hammer, and a container with tools and spare parts. The JCB sheetpiler is a construction crane with a proprietary boom and vibratory hammer that is used to drive piles into

1

soil at a faster rate than ordinary sheetpilers. The JCB sheetpiler uses the Forced Resonance Free ("FRF") sheetpiling method, which was patented by Peter van Halteren and Jan van de Coterlet (Patent Number 5,823,272). SBBV has a license to use the FRF sheetpiling method when using the JCB sheetpiler.

According to the agreement provided, the lease of the equipment was to commence on May 1, 2006 and end on April 30, 2007. The parties could extend the lease if they so desired. (Exb. A). The agreement further indicates that the ownership of the "Equipment and any and all parts, shall at all times remain with" SBBV and ASAP "shall have no right or interest in the Equipment except the right to use the Equipment upon the terms and conditions set out" in the lease. (Exb. A). SBBV claims that ASAP has paid rental for the equipment through March 31, 2010, and that the lease term expired on March 31, 2010. SBBV further states its refusal to extend the lease beyond March 31, 2010, and demands that ASAP return the equipment no later than April 1, 2010.

Sterk alleges that, in March 2009, ASAP's managing partner, Kimmit, entered into a contract with Sterk, which is evidenced by a Memorandum of Understanding ("MOU"). (Exb. B). The MOU explains that Kimmit will transfer 51% ownership in ASAP to Sterk and that Sterk will reimburse Kimmit for 51% of the fair market value of the assets. Sterk alleges that the parties agreed to use the ASAP business entity as the vehicle to create a joint venture that would operate a construction business that would use ASAP's existing business base and Sterk's license rights and construction machinery, including the JCB sheetpilers. (Doc. 9). Sterk claims that an integral part of the agreement was that it would acquire a controlling interest because it did not

intend to give up control of its patent licenses or proprietary construction machinery, including the JCB sheetpilers. (Doc. 9).

The MOU explains that "Sterk will sell the JCB rented by ASAP, a second JCB, a replacement boom for the rented JCB and 2 23 VMA vibratory hammers to ASAP for the amount of USD 1,100,000." (Exb. B). The MOU further explains that the purchase will be financed through a five year loan through Sterk. (Exb. B.). The MOU also states that Sterk would sell some other equipment at a price to be agreed upon. (Exb. B.). The MOU further states that the "equipment will be shipped by Sterk to ASAP by April 9, 2009." (Exb. B). The MOU also states that "ownership of the patent on the sheetpiler will be transferred by Sterk to ASAP at an estimated cost of Euro 100,000." (Exb. B). Sterk alleges that because it was to own a controlling interest in ASAP, "shipment of the construction machinery and tools to ASAP was not intended by the parties to divest Sterk of control over the equipment to be shipped." (Doc. 9).

On April 6, 2009, Sterk delivered a second JCB sheetpiler, two vibratory hammers, and a Caterpillar 322 LN sheetpiler to ASAP. (Exb. C). Sterk alleges that delivery of the equipment was done in reliance on the agreement set forth in the MOU, providing that it would own a controlling interest in ASAP. (Doc. 9). Sterk states that the invoices sent with the equipment "were prepared for shipping purposes only and did not represent an offer or otherwise evidence an agreement to sell ASAP [the equipment] for $274,750, nor did the [invoices] alter in any way the terms of the parties' March 2009 contract evidenced by the MOU." (Doc. 9).

Sterk claims that after the March 2009 MOU, the parties exchanged initial drafts of an operating agreement, but that contact regarding the agreement stopped after August 19, 2009. (Doc. 9). On September 9, 2009, Sterk received a wire transfer in the amount of $274,750. (Doc. 9). A Sterk representative telephoned Kimmit's principal to ask what was the purpose of the funds. (Doc. 9). That night, Kimmit's principal responded in an e-mail stating that the money was a purchase payment for the equipment. (Doc. 9). Kimmit's principal further stated that ASAP was no longer willing to establish the joint venture set forth in the MOU, and that it no longer had to fulfill any obligations under the MOU. (Doc. 9).

Plaintiffs, Staaldam Beheer B.V. ("SBBV") and Sterk Midden Nederland B.V. (Sterk), filed an amended complaint (Doc. 9) on January 14, 2010, alleging contractual rescission, unjust enrichment, conversion, and breach of contract. On February 3, 2010, Defendants filed a Dispositive Motion to Dismiss the First Amended Complaint (Doc. 11), under Federal Rule of Civil Procedure 12(b)(6).

## **Standard of Review**

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." *Fed. R. Civ. P. 12(b)(6)*. A trial court is required to view the complaint in the light most favorable to the plaintiff. *Ill. ex rel. Madigan v. Telemarketing Assocs. Inc., 538 U.S. 600, 123 S. Ct. 1829, 155 L. Ed. 2d 793 (2003)*. To survive a Rule 12(b)(6) motion, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. Furthermore, complaint may not be dismissed "unless it

4

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lopez v. First Union Natl. Bank of Fla., 129 F.3d 1186, 1189 (11th Cir. 1997)*; *Am. Ass'n of People with Disabilities v. Smith, 227 F. Supp. 2d 1276, 1280 (M.D. Fla. 2002)*.

In considering a motion to dismiss, the court limits its considerations to the pleadings and exhibits attached thereto. *GSW, Inc. v. Long Co., Ga., 999 F.2d 1508, 1510 (11th Cir. 1993)*. Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(2)*. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not require the plaintiff to allege specific facts, a plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly, 550 U.S. at 555, 570*. The "pleading standard Rule 8 announces does not require 'detailed factual allegations,' but demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)*.

## Discussion

In their motion to dismiss, Defendants allege that Plaintiffs' contractual rescission and conversion claims are barred under Florida's economic loss rule, that Plaintiffs failed to state the necessary elements for a rescission action, that Plaintiffs failed to state a claim for unjust enrichment by pleading that there was a written contract, that Plaintiffs' have no title to the equipment, and finally, that the conversion claim is based on an unenforceable "agreement to

5

agree." Viewing the facts in the light most favorable to the plaintiffs, the defendants' motion to dismiss is denied for the following reasons.

    I.  Florida's Economic Loss Rule

The defendants contend that Counts I and III of the plaintiffs' complaint (the contractual rescission and conversion claims) are barred by Florida's economic loss rule. (Doc. 11). However, the Florida Supreme Court has limited application of the economic loss rule to two circumstances, specifically holding that "the economic loss rule bars a negligence action to recover solely economic damages only in circumstances where the parties are in contractual privity or the defendant is a manufacturer or distributor of a product, and no established exception to the application of the rule applies." *LEXSTAT 4-112 Fla. Torts § 112.04; See Indemnity Ins. Co. of North Am. v. American Aviation, Inc., 891 So. 2d 532, 543 (Fla. 2005).*

    A.  Contractual Rescission

Plaintiffs correctly assert that rescission is a contractual remedy, and not a tort. (Doc. 14). Furthermore, the economic loss rule does not apply when there is an allegation of fraud in the inducement or negligent misrepresentation. *See Allen v. Stephan Co., 784 So. 2d 456, 457–458 (Fla. 4th DCA 2000).* Where parties appear to negotiate freely, the economic loss rule generally bars recovery; however, fraud in the inducement presents a special situation in which one party's fraudulent behavior hinders the ability of its counterparty to negotiate fair terms and make an informed decision. In the Complaint, the plaintiffs allege that Kimmit falsely misrepresented and "intended to induce, and did in fact induce, Sterk to deliver millions of dollars of equipment and intellectual property to Kimmit without adequate consideration." (Doc. 9).

6

The economic loss rule does not bar the plaintiffs' contractual rescission claim because contractual rescission is a contractual remedy, not a tort. In any event, the plaintiffs base their contractual rescission claim on allegations of fraudulent representations and fraud in the inducement, which is also exempt from the economic loss rule.

B. Conversion

The Supreme Court of Florida has held that the economic loss rule does not eliminate causes of action based upon torts independent of the contractual breach even though a breach of contract action exists. *Alex Hofrichter, P.A. v. Zuckerman & Vendetti, P.A., 710 So.2d 127, 129 (Fla. 3d DCA 1998)*(citing *HTP, Ltd. v. Lineas Aereas Costaricenses, 685 So. 2d 1238, 1239 (Fla. 1996))*. Where there is a contract, "a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract." *HTP*, 685 So. 2d. at 1239. More specifically, "conversion claims which are independent of a breach of contract are not barred by the economic loss rule." *Duncan v. Kasim, 810 So.2d 968, 970 (Fla. 5th DCA 2002)*.

In alleging conversion, the plaintiffs allege that ASAP contends that it owns the equipment shipped to it, that Kimmit, the managing member of ASAP, induced Sterk to deliver the equipment by agreeing to enter into a joint venture with Sterk, and agreeing to recognize Sterk's ownership of the equipment, an agreement which it repudiated after receiving the equipment. (Doc. 9). The plaintiffs also contend that "ASAP wrongfully asserts dominion" over the equipment, "which is the property of Sterk." (Doc. 9). The plaintiffs further assert that ASAP's position regarding ownership of the equipment "is inconsistent with Sterk's actual ownership" of the equipment. (Doc. 9).

For the reasons stated, the plaintiffs allegation of conversion is not barred by the economic loss rule.

### III. Elements of Contractual Rescission

To state a cause of action for rescission or cancellation of a contract, "a party must allege: (1) the character or relationship of the parties; (2) the making of the contract; (3) the existence of fraud, mutual mistake, false representations, impossibility of performance, or other ground for rescission or cancellation; (4) that the party seeking rescission has rescinded the contract and notified the other party to the contract of such rescission. (5) If the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible. (6) Lastly, that the moving party has no adequate remedy at law." *Ahern v. Fid. Nat'l Title Ins. Co., 664 F. Supp. 2d 1224 (M.D. Fla. 2009)* (citing *Crown Ice Mach. Leasing Co., 174 So. 2d 614, 617 (Fla. 2d DCA 1965)* and *Billian v. Mobil Corp., 710 So. 2d 984, 991 (Fla. 4th DCA)*). In their motion to dismiss, the defendants allege that the plaintiffs failed to plead the fifth element properly by failing to show that they have made an offer to restore, or even that they have the ability to restore, any benefits received from the contract, if restoration is possible. (Doc. 11).

After stating the elements for contractual rescission, the Court in *Crown Ice* stated that the requirements to state a cause of action for rescission of the contract were met by the plaintiff in its original complaint, "even though there was no allegation to restore [the defendant] to its original position." *Crown Ice, 174 So. 2d 614 at 617.* The Court found that it was not necessary to do so because, "under the other allegations of the complaint, it was averred that [the plaintiff] owed no further duty" to the defendant, and that the plaintiff "had received no benefits for which

8

it still owed [the defendant]." *Id*. While the defendants cite *Willis v. Fowler* in their motion to dismiss (Doc. 11), the general principals found in *Willis* and stated by the defendants in *Crown Ice* was applicable where the party seeking rescission had received tangible benefits from its adversary, for which the adverse party had not been compensated. *Crown Ice, 174 So. 2d 614 at 618*. (stating that standard in *Willis v. Fowler, 136 So. 358 (Fla. 1931)* that a complaint is infirm for not alleging an offer to restore or make whole the defendant was not applicable where the defendant has received compensation and the plaintiff had no further duty to the defendant and received no benefits for which it still owed the defendant).

In the complaint, the plaintiffs clearly state that they received *no benefit* from the March 2009 contract (MOU) "because the fair market rental value of the [equipment] far exceeds the amount wired by Kimmit." (Doc. 9). By stating that the equipment was shipped under the MOU, the plaintiffs have asserted that they met their alleged contractual obligations under the MOU to provide the equipment and owes no further duty to the defendants; and, by asserting that plaintiffs have received less money than what the equipment was worth, at either its fair market value or its fair rental value, the plaintiffs have alleged that it received no benefit for the equipment. Therefore, when considering the facts in the light most favorable to the plaintiffs, the plaintiffs have stated the necessary elements for a rescission action.

IV. Unjust Enrichme/nt

The defendants contend that the plaintiffs' unjust enrichment claim is improper because the plaintiffs allege the existence of a contract as its primary argument. (Doc. 11). However, while the plaintiffs would not be able to recover under the unjust enrichment theory if there is a valid contract, they are correct in asserting that unjust enrichment can be pled in the alternative.

9

(See Doc. 14). Under *Federal Rule of Civil Procedure 8(d)*, the plaintiffs can plead in the alternative even if the theories are inconsistent with one another. *See In re Checking Account Overdraft Litigation, ___ F.Supp.2d ____, 2010 U.S. Dist. LEXIS 22761, 2010 WL 841305 (S.D. Fla. 2010)* (finding that the defendants had not conceded that the plaintiffs were entitled to recovery under the contract; and, therefore, if the contractual claim failed, the plaintiffs still may be entitled to relief under an unjust enrichment theory).

Therefore, when viewing the facts in the light most favorable to the plaintiffs, the unjust enrichment pleading should not be dismissed.

### V. Title under Fla. Stat. §672.401(2) and Conversion

The defendants assert that the plaintiffs' conversion claim should be dismissed because the plaintiffs do not hold title to the property allegedly converted. (Doc. 11). However, the statute referenced by the defendants presumes that there was a sale of a good and that the contract was for a sale of good. The plaintiffs have alleged that there were two contracts: one to lease the equipment at issue; and another (the MOU) to create a joint venture, the result of which would be the sale of the equipment to the joint venture, 51% of which was to be owned by the plaintiffs. (Doc. 9). However, the plaintiffs do not currently hold a controlling interest in a joint venture with the defendants, nor do they have the equipment that would have been sold to the joint venture.

Furthermore, Fla. Stat. §672.401(1) states, "title to goods passes from the seller to the buyer in any manner and on any **conditions explicitly agreed on** by the parties." *Fla. Stat. §672.401(1)* (emphasis added). Plaintiffs appear to contend that the condition explicitly agreed

upon was a controlling interest in the joint venture to be owned by both plaintiffs and defendants.

Additionally, whether there was a sale of goods pursuant to an agreement to the parties would require a determination as to whether there was, in fact, a contract between the parties. Moreover, it would require the Court to determine the intent of the parties with respect to the MOU, a determination best made after both sides have presented evidence in open court.

Therefore, the motion to dismiss based on the plaintiffs' alleged lack of title is denied.

VI. The Memorandum of Understanding

The defendants contend that the breach of contract claim should be dismissed because the MOU is an unenforceable "agreement to agree." The defendants base this contention on the theory that the parties had not reached an agreement to all essential terms of the agreement. More specifically, the parties had not agreed on an operating agreement for the joint venture or the employment agreement for Simon Den Tuinder. (Doc. 11). Arguably, the agreement in this case contained the essential terms of an agreement to create a joint venture. Whether or not the parties agreed with respect to the two terms brought up by the defendants are, arguably, collateral matters not essential to the creation of the joint venture. *See Corporate Fin., Inc. v. Principal Life Ins. Co., 461 F. Supp. 2d 1274, 1289–1290 (S.D. Fla. 2006)*. Therefore, the motion to dismiss is denied on this basis. Accordingly, it is

**ORDERED** that the Motion to Dismiss (Doc. 11) be **DENIED** and the defendants shall answer the complaint within ten days.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 28th day of April, 2010.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record.